**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **UNITS Franchising Group, Inc.**,<br>a South Carolina corporation,<br><br>Plaintiff,<br><br>v.<br><br>**Rocket City Portable McStorage, LLC**,<br>an Alabama limited liability company,<br><br>and<br><br>**David McArdle**,<br>an Alabama citizen,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:26-cv-03988-DCN<br><br><br><br><br><br><br><br>**COMPLAINT** |

Plaintiff UNITS Franchising Group, Inc. ("UNITS" or "Franchisor") for its Complaint against Defendants Rocket City Portable McStorage, LLC ("RCPM"), and David McArdle ("McArdle" and, together with RCPM, "Defendants"; McArdle is also referred to herein as the "Franchisee"), alleges as follows:

**A. Introduction**

1. This is an action for injunctive, declaratory, and monetary relief to enforce the terms of a Franchise Agreement between UNITS and Defendants and to enjoin Defendants' trademark infringement under the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051, *et seq.* UNITS validly terminated the Franchise Agreement after McArdle commenced a voluntary bankruptcy proceeding.[1] Upon termination, Defendants were obligated, among other things, to: (1)

[1] As discussed below, although the Franchise Agreement authorized immediate termination upon a bankruptcy filing, UNITS first sought and obtained relief from the automatic stay from the United States Bankruptcy Court for the Northern District of Alabama before terminating the Franchise Agreement and enforcing its contractual rights. The Bankruptcy Court entered an order authorizing UNITS to enforce its post-termination rights and remedies under the Franchise Agreement. Thereafter, on August 7, 2026, UNITS terminated the Franchise Agreement and demanded compliance with Defendants' post-termination obligations.

immediately cease operating the former UNITS franchised business; (2) cease use of the UNITS trademarks and all other proprietary materials; (3) cease holding themselves out as a present or former UNITS franchisee; (4) comply with post-termination restrictive covenants prohibiting operation of a competing portable storage and moving business; (5) return confidential information and proprietary materials belonging to UNITS; (6) comply with UNITS' contractual rights regarding franchise assets, containers, equipment, and related property; and (7) comply with all obligations imposed by the Franchise Agreement and Personal Guaranty.

2. Defendants have ignored those obligations. Instead, Defendants are operating a directly competing portable storage business under the name Cube$^2$ Portable Storage or "Cube Squared Portable Storage" ("Cube$^2$") in the same geographic area served by Defendants' former UNITS franchise. Defendants market and provide the same portable storage, moving, delivery, warehouse storage, and related services that Defendants previously offered as a UNITS franchisee. Defendants operate from the same location used in connection with the former franchise and openly advertise themselves as the premier portable storage provider in Northern Alabama. Moreover, Defendants have affirmatively promoted Cube$^2$ as the continuation of their former UNITS business. Through social media posts, website content, and advertising, Defendants repeatedly told consumers that "UNITS of Huntsville is now Cube$^2$ Portable Storage," and further represented that Cube$^2$ has the "[s]ame owners. Same employees. Same equipment. Same great service." Defendants' conduct is not accidental. Defendants intentionally seek to capitalize on the goodwill, customer relationships, reputation, and brand recognition developed through the UNITS franchise system while simultaneously ignoring the contractual obligations that survive termination.

3. Defendants' conduct violates the Franchise Agreement, the Personal Guaranty and Assumption of Obligations, the post-termination restrictive covenants, and federal trademark law.

Defendants' misconduct is causing immediate and irreparable harm to UNITS, its trademarks, its confidential information, its goodwill, and its franchise system. Accordingly, UNITS seeks preliminary and permanent injunctive relief and declaratory relief, together with Defendants' profits and UNITS' damages for Defendants' post-termination trademark violations, and together with attorneys' fees, costs, and all other relief permitted by law and contract.

**B. The Parties**

4. UNITS is a South Carolina corporation with its principal place of business located at 234 Seven Farms Drive, Suite 111B, Daniel Island, South Carolina 29492. UNITS is the franchisor of the UNITS Moving and Portable Storage® franchise system.

5. Defendant David McArdle is an individual residing in Alabama. Upon information and belief, McArdle controls and operates the competing business known as Cube² Portable Storage.

6. Defendant Rocket City Portable McStorage, LLC is an Alabama limited liability company with a principal place of business at 2775 Wall Triana Highway SW, Suite A, Huntsville, Alabama. Upon information and belief, Rocket City Portable McStorage, LLC operates and/or participates in the operation of Cube² Portable Storage.

7. Upon information and belief, Defendants are acting in concert and participation with one another in the operation, promotion, management, and ownership of Cube² Portable Storage.

**C. Jurisdiction and Venue**

8. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this action arises under the Lanham Act, and pursuant to 28 U.S.C. § 1367 because UNITS' state-law claims are so related to UNITS' federal claims that they form part of the same case or controversy. This Court also has subject matter jurisdiction pursuant

to 28 U.S.C. § 1332. The action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. UNITS is a citizen of South Carolina; McArdle is a citizen of Alabama; and RCPM is likewise a citizen of Alabama because, upon information and belief, its sole member is McArdle.

9. This Court has personal jurisdiction over Defendants by virtue of express agreement to jurisdiction in the United States District Court for the District of South Carolina in the Franchise Agreement and related agreements. In Section 22.5 of the Franchise Agreement, Franchisee "irrevocably consents to the personal jurisdiction of the state and federal courts of Charleston, South Carolina," expressly agrees "to the jurisdiction and venue of the United States District Court for the District of South Carolina," acknowledges that the Franchise Agreement "has been entered into in the State of South Carolina," and acknowledges that Franchisee "is to receive valuable and continuing services emanating from Franchisor's headquarters in South Carolina, including but not limited to training, assistance, support, and the development of the System." Additionally, this Court has personal jurisdiction over Defendants because Defendants entered into and performed under a continuing franchise relationship with UNITS, a South Carolina franchisor, that involved ongoing contacts with South Carolina, including training, support, reporting, and payment obligations directed to UNITS in South Carolina. RCPM is likewise subject to personal jurisdiction in this Court because, upon information and belief, RCPM is owned and controlled by McArdle, operated the Franchised Business and now operates its continuation, and is so closely related to the Franchise Agreement and to the franchise relationship that it was foreseeable that RCPM would be bound by the Franchise Agreement's forum-selection provisions.

10. Venue in this Court is appropriate as Defendants have expressly agreed to venue in the United States District Court for the District of South Carolina in the Franchise Agreement and related agreements. In Section 22.5 of the Franchise Agreement, the parties "expressly agree[d] to

the jurisdiction and venue of the United States District Court for the District of South Carolina" and agreed to bring any action, claim, suit, or demand allegedly arising from or related to the Franchise Agreement within South Carolina. Venue in this Court is also appropriate pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to UNITS' claims, including Defendants' contractual undertakings directed to UNITS in South Carolina and the injury to UNITS' trademarks, goodwill, and franchise system, occurred in and was directed at this District.

**D. The UNITS Moving and Portable Storage® Franchise System**

11. UNITS has developed a proprietary franchise system for the establishment, development, operation, and promotion of portable storage and moving businesses throughout the United States. The UNITS system features delivery, warehouse storage, and transport of portable, structurally secure, modular self-storage containers that may be delivered to a customer's property, stored in a warehouse facility, or transported to other locations. The distinguishing characteristics of the UNITS system include proprietary operating methods, standards, procedures, marketing programs, customer development techniques, business strategies, trade secrets, operational know-how, confidential information, and the goodwill associated with the UNITS trademarks. Through franchise agreements, UNITS grants qualified franchisees a limited right to operate a UNITS franchised business utilizing the UNITS system and trademarks.

12. UNITS owns and licenses valuable trademarks used in connection with the UNITS franchise system, including the federally registered mark UNITS®, United States Registration No. 3,466,981, registered on July 15, 2008. Registration No. 3,466,981 is valid and subsisting and has become incontestable pursuant to 15 U.S.C. § 1065. The UNITS trademarks, together with the other trademarks, service marks, logos, and commercial symbols licensed to franchisees under the Franchise Agreement, are referred to herein as the "Marks" or the "UNITS Marks." The UNITS

trademarks represent substantial goodwill and are recognized by consumers as identifying services originating with UNITS and authorized UNITS franchisees.

**E. The Franchise Agreement and Personal Guaranty**

13. Effective October 13, 2022, McArdle entered into a Franchise Agreement with UNITS (the "Franchise Agreement") pursuant to which UNITS granted McArdle a limited, revocable license to operate a UNITS franchised business utilizing the UNITS system and Marks within a protected territory in and around Huntsville, Alabama.[2] A true and correct copy of the Franchise Agreement is attached hereto as **Exhibit A**.

14. The protected territory (the "Protected Territory") is defined in Exhibit C to the Franchise Agreement and consists of designated zip codes comprising the Huntsville, Alabama market. Upon information and belief, the location from which Defendants operated the Franchised Business, and from which Defendants now operate Cube², 2775 Wall Triana Highway SW, Suite A, Huntsville, Alabama, is within the Protected Territory.

15. The Franchise Agreement granted McArdle the right to operate a UNITS franchise utilizing the UNITS system, proprietary methods, confidential information, trade secrets, trademarks, and goodwill associated with the UNITS brand.

16. During the term of the Franchise Agreement, McArdle received valuable confidential information, trade secrets, business methods, operating procedures, marketing strategies, customer-development techniques, and proprietary know-how belonging to UNITS.

17. Pursuant to Section 6.3 of the Franchise Agreement, "Competitive Business" is defined broadly to include "any business that offers (or grants franchises or licenses to others to operate a business that offers) moving or storage services or any products or services which are

---

[2] Upon information and belief, at some point during the Parties' relationship McArdle began operating the Franchised Business through RCPM and/or caused RCPM to perform franchise operations.

the same as or similar to those provided by UNITS Businesses or in which Trade Secrets or other Confidential Information could be used to the disadvantage of Franchisor, its Affiliates, or System franchisees. . .”

18. Pursuant to Section 16.2 of the Franchise Agreement, McArdle agreed that except as otherwise approved in writing by UNITS:

> neither Franchisee, nor any holder of a legal or beneficial interest in Franchisee, nor any officer, director, executive, manager, or member of the professional staff of Franchisee, shall, for a period of two (2) years after the expiration or termination of [the Franchise Agreement] regardless of the cause of termination, either directly or indirectly, for themselves or through, on behalf of or in conjunction with, any person, persons, partnership, corporation, limited liability company or other business entity:
>
> (a) own an interest in, manage, operate, or provide services to any Competitive Business located or operating (a) within a fifty (50) mile radius of the Approved Location or within the Protected Territory (whichever is greater), or (b) within a fifty (50) mile radius of the location of any other UNITS Business in existence at the time of termination or expiration; or
>
> (b) solicit or otherwise attempt to induce or influence any business associate of Franchisor to terminate or modify his, her, or its business relationship with Franchisor or to compete against Franchisor.

19. Pursuant to Section 16.2 of the Franchise Agreement, McArdle further agreed and acknowledged that the restrictive covenants in the Franchise Agreement are “fair and reasonable and are justifiably required for purposes including but not limited to the following: (1) to protect the Trade Secrets of Franchisor; (2) to induce Franchisor to grant a franchise to Franchisee; and (3) to protect Franchisor against its costs in training Franchisee and its officers, directors, executives, professional staff, and Designated Managers.”

20. Pursuant to Section 16.3 of the Franchise Agreement, McArdle agreed and acknowledged that if he operates any other business, he “shall not use any reproduction, counterfeit, copy, or colorable imitation of the Marks either in connection with such other business or the promotion thereof, that is likely to cause confusion, mistake, or deception, or that is likely to dilute Franchisor’s rights

in the Marks." McArdle further agreed that he "shall not utilize any designation of origin, description, or representation that falsely suggests or represents an association or connection with Franchisor."

21. Pursuant to Section 16.1 of the Franchise Agreement, McArdle also promised upon termination to immediately: (1) cease operating the franchised business; (2) cease use of the UNITS Marks; (3) cease holding itself out as a current or former UNITS franchisee; (4) cease use of confidential information and trade secrets; (5) return UNITS proprietary materials and confidential information; and (6) comply with all post-termination obligations contained in the Agreement.

22. Pursuant to Section 21.2 of the Franchise Agreement, McArdle agreed that:

> As any breach by Franchisee of any of the restrictions contained in this Agreement, including the confidentiality, restrictive covenant, and trademark usage provisions of this Agreement, would result in irreparable injury to Franchisor, and as the damages arising out of any such breach would be difficult to ascertain, in addition to all other remedies provided by law or in equity, Franchisor shall be entitled to seek injunctive relief (whether a restraining order, a preliminary injunction, or a permanent injunction) against any such breach, whether actual or contemplated.

23. Pursuant to Section 22.4 of the Franchise Agreement, nothing in the Agreement prevents UNITS "from seeking to obtain injunctive relief, without posting a bond, against threatened conduct that will cause Franchisor loss or damages, under the usual equity rules."

24. Pursuant to Sections 16.1.4 and 16.1.8 of the Franchise Agreement, upon termination Franchisee must take such action as may be necessary to cancel or assign to UNITS, at UNITS' option, any assumed name or equivalent registration containing the name "UNITS" or any other Mark, and must assign to UNITS all telephone listings and numbers for the Franchised Business.

25. Pursuant to Section 21.8 of the Franchise Agreement, the covenants contained in Sections 6.1, 6.3, 6.4, and 16.2 "shall be construed as independent of any other covenant or provision" of the Franchise Agreement, and, if all or any portion of any such covenant is held to

be unenforceable, unreasonable, or invalid, it "shall be amended to provide for limitations on disclosure of Trade Secrets and other Confidential Information or on competition to the maximum extent provided or permitted by law."

26. Pursuant to Section 16.4 of the Franchise Agreement, UNITS possesses a contractual right, exercisable for sixty (60) days following termination of the Franchise Agreement, to purchase any or all assets of the Franchised Business, including leasehold improvements, containers, equipment, and supplies, at fair market value excluding goodwill. Section 16.4 further authorizes UNITS to offset against the purchase price any amounts owed to UNITS by Franchisee.

27. In connection with the Franchise Agreement, McArdle executed a Personal Guaranty and Assumption of Obligations (the "Personal Guaranty"). Pursuant to the Personal Guaranty, McArdle personally guaranteed and assumed the full performance of the obligations arising under the Franchise Agreement, including the post-termination restrictive covenants and other continuing obligations.

28. Contemporaneously with the Franchise Agreement, McArdle also executed a Nondisclosure and Non-Competition Agreement dated October 13, 2022 (the "NDA"), in the form attached as Exhibit A to the Franchise Agreement. Pursuant to the NDA, McArdle agreed not to use or divulge UNITS' Trade Secrets or to use them to compete against UNITS or its franchisees, obligations that expressly continue after the termination of McArdle's relationship with the franchise, regardless of the reason for termination. Pursuant to Section 6.4 of the Franchise Agreement, UNITS is a third-party beneficiary of the NDA with the right to enforce its covenants.

29. Pursuant to Section 17.2 of the Franchise Agreement, neither Franchisee nor any holder of a legal or beneficial interest in Franchisee may sell, assign, convey, sublicense, or otherwise transfer any interest in the Franchise Agreement, the franchise, or the Franchised

Business without the prior written approval of UNITS, and "[a]ny purported transfer without such approval shall be null and void and shall constitute a material breach" of the Franchise Agreement.

30. Pursuant to Section 21.5 of the Franchise Agreement, if Franchisee assigns the Franchise Agreement to a limited liability company, all members and managers of that company personally and unconditionally guarantee the payment of Franchisee's monetary obligations and agree to be bound by the restrictions upon Franchisee's activities upon transfer, termination, or expiration of the Franchise Agreement, as if each were an original party in his or her individual capacity.

31. UNITS never approved any transfer or assignment of the Franchise Agreement, the franchise, or the Franchised Business to RCPM. Accordingly, McArdle remains the Franchisee under the Franchise Agreement. Alternatively, to the extent any de facto transfer to, or assumption by, RCPM occurred, any such transfer was unauthorized, null and void, and a material breach of the Franchise Agreement; RCPM took and operated the Franchised Business subject to the terms of the Franchise Agreement, including its post-termination obligations; and McArdle remains personally bound with respect to RCPM's obligations pursuant to Section 21.5 of the Franchise Agreement and the Personal Guaranty.

**F. The Bankruptcy Proceeding and Termination of the Franchise Agreement**

32. On February 24, 2026, McArdle filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Alabama, Case No. 26-80402-CRJ11.

33. On July 9, 2026, McArdle emailed UNITS' executives and employees thanking them for the "opportunity, support, and assistance with my growth over the past three years;" acknowledging "[m]y time with UNITS has been a valuable learning experience;" and stating that "I appreciate the relationships and knowledge I have gained along the way." McArdle further

expressed his legally defective position that his personal bankruptcy filing purportedly "voids my Franchise Agreement."

34. Pursuant to Section 15.1.1 of the Franchise Agreement, McArdle agreed and acknowledged that the Franchise Agreement automatically terminates without notice or an opportunity to cure if Franchisee files a voluntary petition in bankruptcy. Section 15.1.1 thus provided grounds for termination of the Franchise Agreement upon McArdle's bankruptcy filing. UNITS does not, however, rely on Section 15.1.1 as self-executing; UNITS instead relies on the Bankruptcy Court's Order and UNITS' subsequent written Notice of Termination.

35. Because federal bankruptcy law may restrict the enforcement of a bankruptcy-triggered termination provision, and in recognition of the automatic stay imposed by 11 U.S.C. § 362, UNITS did not treat the Franchise Agreement as terminated upon the filing of the petition, and instead sought relief from the automatic stay before terminating the Franchise Agreement or taking any other action to enforce its contractual rights.

36. On July 16, 2026, UNITS filed a Motion for Relief from Stay seeking authorization to terminate the Franchise Agreement and enforce its post-termination rights and remedies.

37. Following notice and hearing, the Bankruptcy Court granted UNITS' Motion.

38. On August 6, 2026, the Bankruptcy Court entered an Order granting UNITS relief from the automatic stay and authorizing UNITS to terminate the Franchise Agreement and enforce its post-termination contractual rights and remedies. A true and correct copy of that Order is attached hereto as **Exhibit B**.

39. On August 7, 2026, UNITS delivered a written Notice of Termination to Defendants formally terminating the Franchise Agreement effective August 7, 2026, and demanding immediate compliance with all post-termination obligations. A true and correct copy of the Notice of Termination is attached hereto as **Exhibit C**.

40. Defendants have failed and refused to comply.

**G. Defendants Immediately Rebrand the Former UNITS Franchise as "Cube$^2$ Portable Storage"**

41. Rather than comply with their contractual obligations, Defendants continued operating the same moving and portable storage business under a new name: Cube$^2$ Portable Storage.

42. Upon information and belief, Defendants own, operate, manage, and control Cube$^2$.

43. Cube$^2$ offers portable storage containers, moving services, delivery services, warehouse storage services, and related storage solutions that are identical or substantially similar to the services Defendants previously offered as a UNITS franchisee. Cube$^2$ therefore constitutes a "Competitive Business" under the Franchise Agreement.

44. Defendants operate Cube$^2$ from the same location previously used in connection with the former UNITS franchise, namely 2775 Wall Triana Highway SW, Suite A, Huntsville, Alabama.

45. Cube$^2$ advertises that it serves customers throughout Northern Alabama and Southern Tennessee, which are areas encompassed by or adjacent to the former franchise territory.

46. Defendants have publicly represented that Cube$^2$ is simply a continuation of the former UNITS franchise. Defendants' Instagram profile identifies the business as "Cube$^2$ (formerly UNITS of Huntsville)" and promotes Cube$^2$ using the goodwill associated with the former franchise. Defendants also published numerous social media posts expressly announcing: "UNITS of Huntsville is now Cube$^2$ Portable Storage." Those posts further proclaim: "Same owners. Same employees. Same equipment. Same great service." One of the advertisements distributed by Defendants compares their former UNITS franchise directly to Cube$^2$ and expressly instructs consumers that "UNITS of Huntsville is now Cube$^2$ Portable Storage." Defendants further

represented to consumers that Cube² is "formerly UNITS of Huntsville" and advertised that the business remains locally owned and operated by the same individuals who operated the former franchise.




47. Defendants' own statements establish that Cube² is the continuation of the same portable storage business previously operated as a UNITS franchise.

48. Defendants' conduct violates the Franchise Agreement's post-termination non-competition obligations and intentionally exploits the goodwill developed through the UNITS franchise system.

**H. Defendants Continue to Use and Trade Upon the UNITS Marks**

49. Following termination, Defendants were required to immediately cease use of the UNITS Marks and cease representing themselves as a present or former UNITS franchisee.

50. Defendants have refused to do so.

51. As of August 17, 2026, Defendants' website expressly states that Cube$^2$ was "[f]ormerly known as Units of Huntsville," and uses the UNITS Marks.




52. Defendants' social media accounts similarly identify Cube$^2$ as a continuation of the former UNITS franchise and repeatedly invoke the UNITS name, Marks, and goodwill in connection with advertisements for Cube$^2$.

53. Defendants also converted and rebranded a Google Business profile formerly associated with the UNITS franchise while continuing to capitalize on customer reviews and goodwill originally generated under the UNITS Marks.

54. Defendants' actions are likely to cause and are causing confusion, mistake, and deception among consumers regarding the source, sponsorship, affiliation, and approval of Defendants' services.

## I. Defendants Continue to Exploit Proprietary Improvements Developed During the Franchise Relationship

55. During the course of the franchise relationship, Defendants received access to UNITS' proprietary system, operating methods, confidential information, trade secrets, vendor relationships, customer feedback, equipment specifications, and business know-how.

56. Pursuant to Section 6.2 of the Franchise Agreement, McArdle agreed and acknowledged that all "ideas, concepts, techniques, or materials concerning the Franchised Business, whether or not protectable intellectual property and whether created by or for Franchisee or its owners or employees, must be promptly disclosed to Franchisor and will be deemed the sole and exclusive property of Franchisor and works made-for-hire for Franchisor, and no compensation will be due to Franchisee or its owners or employees thereof."

57. Pursuant to Section 6.2 of the Franchise Agreement, McArdle further agreed that to "the extent any item does not qualify as a 'work made-for-hire' for Franchisor, Franchisee shall assign ownership of that item, and all related rights to that item, to Franchisor and must sign whatever assignment or other documents Franchisor requests to show Franchisor's ownership or to assist Franchisor in obtaining intellectual property rights in the item."

58. During the operation of the former UNITS franchised business, Defendants developed and promoted a refrigerated and climate-controlled portable storage offering referred to as "Cool Cube," "Cool Cubed," "Cooled Cube," or similar iterations thereof (collectively, the "Cool Cube Concept").

59. Upon information and belief, McArdle first explored, conceived, developed, refined, tested, marketed, and/or commercialized the Cool Cube Concept while operating as a UNITS franchisee and while benefiting from the rights, privileges, confidential information,

goodwill, business relationships, facilities, equipment, and opportunities afforded by the Franchise Agreement.

60. Upon information and belief, McArdle utilized relationships, information, opportunities, and resources obtained through the franchise relationship in connection with the development and commercialization of the Cool Cube Concept, including opportunities involving third-party suppliers and vendors introduced or developed through UNITS.

61. Upon information and belief, some or all of the Cool Cube Concept, together with any associated inventions, improvements, modifications, developments, know-how, or intellectual property rights, are owned by or subject to assignment to UNITS pursuant to Section 6.2 of the Franchise Agreement.

62. Following termination of the Franchise Agreement, Defendants continued promoting and offering the Cool Cube Concept through Cube$^2$'s website and marketing materials. Defendants currently advertise mobile refrigeration services and "Cooled Cubes" in conjunction with their competing portable storage business.

63. Despite UNITS' ownership rights and Defendants' contractual obligations, Defendants continue to exploit and commercialize the Cool Cube Concept for their own benefit.

64. Defendants' conduct constitutes an additional breach of the Franchise Agreement and causes continuing harm to UNITS' proprietary business interests.

**J. Defendants Have Failed to Comply with Their Post-Termination Obligations**

65. The Notice of Termination demanded that Defendants immediately comply with all post-termination obligations contained in the Franchise Agreement. Defendants have failed and refused to do so.

66. McArdle, directly and through RCPM, continues operating a Competitive Business within the restricted territory, including the Protected Territory, in violation of the post-termination restrictive covenants.

67. Defendants continue to use and exploit the goodwill associated with the UNITS Marks.

68. Defendants continue representing to customers and the public that Cube² is the continuation of the former UNITS franchise.

69. Defendants continue marketing and promoting services that are identical or substantially similar to those offered through the former UNITS franchised business.

70. Upon information and belief, Defendants continue to possess and utilize confidential information, proprietary materials, know-how, customer information, and other system-related information obtained through the franchise relationship.

71. Upon information and belief, Defendants also continue to possess, utilize, and modify containers, equipment, supplies, and other assets formerly used in connection with the Franchised Business, including assets subject to UNITS' post-termination contractual rights under the Franchise Agreement.

72. Upon information and belief, Defendants have altered, rebranded, removed identifying features from, and/or otherwise modified containers and equipment formerly used in connection with the Franchised Business, thereby impairing UNITS' contractual rights and post-termination remedies regarding those assets.

73. UNITS has no adequate remedy at law for the ongoing loss of goodwill, customer confusion, trademark injury, misuse of confidential information, impairment of its contractual rights, and competitive harm caused by Defendants' conduct.

74. Unless restrained by this Court, Defendants will continue violating the Franchise Agreement, the Personal Guaranty, and federal trademark law.

**COUNT I**
**BREACH OF FRANCHISE AGREEMENT (AGAINST McARDLE)**

75. UNITS incorporates by reference the preceding paragraphs as though fully set forth herein.

76. The Franchise Agreement is a valid and enforceable contract between UNITS and McArdle. McArdle is the Franchisee under the Franchise Agreement. UNITS never approved any transfer of the Franchise Agreement or the Franchised Business to RCPM, and any purported or de facto transfer to RCPM is null and void under Section 17.2 of the Franchise Agreement, was itself a material breach of the Franchise Agreement, and left RCPM operating the business subject to the Franchise Agreement's terms. Upon information and belief, RCPM is owned and controlled by McArdle, is a limited liability company through, on behalf of, or in conjunction with which McArdle is violating his post-termination obligations within the meaning of Section 16.2 of the Franchise Agreement, and has acted in concert and participation with McArdle in violating the Franchise Agreement.

77. UNITS fully performed its obligations under the Franchise Agreement.

78. Pursuant to the Franchise Agreement and the Bankruptcy Court's order granting relief from stay, the Franchise Agreement was properly terminated.

79. Following termination, McArdle became obligated to comply with all surviving obligations of the Franchise Agreement, including the post-termination restrictive covenants and post-termination obligations.

80. McArdle, acting directly and through RCPM, breached the Franchise Agreement by operating Cube² Portable Storage, a Competitive Business, within the restricted geographic

area, including within the Protected Territory and within fifty (50) miles of the location of the former Franchised Business.

81. McArdle further breached the Franchise Agreement by continuing, directly and through RCPM, to use and exploit the goodwill associated with the UNITS Marks and by holding Cube² out as the continuation of the former UNITS franchise.

82. McArdle further breached the Franchise Agreement by failing to cease use of the UNITS Marks and by causing the businesses under his control to continue representing themselves as the continuation of the former UNITS franchise.

83. McArdle further breached the Franchise Agreement by continuing to use and/or alter containers, equipment, and other assets of the former Franchised Business which threatens to impair UNITS' contractual rights under Section 16.4 of the Franchise Agreement and constitutes further disregard of Defendants' post-termination obligations.

84. McArdle further breached the Franchise Agreement, including Section 6.2, by failing to disclose and assign, and by continuing to exploit, improvements, developments, inventions, and proprietary concepts and related rights that are owned by or subject to assignment to UNITS under Section 6.2 of the Franchise Agreement, including the Cool Cube Concept.

85. As a direct and proximate result of McArdle's breaches, UNITS has suffered and continues to suffer substantial and irreparable harm.

86. Pursuant to the Franchise Agreement, UNITS is entitled to injunctive relief and all other remedies available under the Agreement and applicable law.

## COUNT II
## BREACH OF PERSONAL GUARANTY AND ASSUMPTION OF OBLIGATIONS (AGAINST McARDLE, PLED IN THE ALTERNATIVE)

87. UNITS incorporates by reference the preceding paragraphs as though fully set forth herein.

88. In connection with the Franchise Agreement, McArdle executed a Personal Guaranty and Assumption of Obligations pursuant to which he personally guaranteed performance of the obligations arising under the Franchise Agreement.

89. The Personal Guaranty constitutes a valid and enforceable contract.

90. Pursuant to the Personal Guaranty, McArdle obligated himself to perform and satisfy the obligations arising under the Franchise Agreement, including post-termination obligations and restrictive covenants.

91. In the Assumption of Obligations component of the Personal Guaranty, McArdle separately and directly agreed to be bound by the confidentiality provisions of Article 6 of the Franchise Agreement, the in-term and post-term covenants against competition contained in Article 16, the indemnification obligations of Section 20.2, and the dispute-resolution provisions of Section 22, as if he were an original party in his individual capacity. Because McArdle is himself the named Franchisee, this Count is pleaded as an additional and alternative source of McArdle's direct obligations. Pursuant to the Personal Guaranty and Section 21.5 of the Franchise Agreement, McArdle further guarantees performance of the Franchise Agreement's obligations regardless of whether those obligations are attributed to McArdle individually or to any entity, including RCPM, to which the Franchise Agreement was purportedly assigned or through which the Franchised Business was operated.

92. McArdle failed and refused to satisfy those obligations.

93. McArdle continues to operate a Competitive Business, continues exploiting the goodwill associated with the UNITS Marks, continues holding himself out as the continuation of the former UNITS franchise, and continues violating the restrictive covenants guaranteed by McArdle.

94. As a direct and proximate result of these breaches, UNITS has suffered and continues to suffer irreparable injury.

95. Pursuant to the Personal Guaranty, Franchise Agreement, and applicable law, UNITS is entitled to injunctive relief and all other relief available at law and in equity.

## COUNT III
## TRADEMARK INFRINGEMENT

96. UNITS incorporates by reference the preceding paragraphs as though fully set forth herein.

97. UNITS owns valid and enforceable trademark rights in the federally registered UNITS® trademark, including United States Trademark Registration No. 3,466,981.

98. The UNITS Marks are valid, subsisting, and protectable trademarks used extensively throughout the United States in connection with the UNITS franchise system.

99. Through years of use and promotion, the UNITS Marks have acquired significant goodwill and are recognized by consumers as identifying services originating from or authorized by UNITS.

100. Defendants' authorization to use the UNITS Marks arose solely from the Franchise Agreement.

101. Upon termination of the Franchise Agreement, any license, authorization, or permission to use the UNITS Marks immediately ceased.

102. Despite termination, Defendants have continued using the UNITS Marks and the goodwill associated with those Marks in connection with the advertising, promotion, and operation of Cube² Portable Storage.

103. Defendants' continued use of the UNITS Marks is unauthorized.

104. Defendants' actions are likely to cause confusion, mistake, and deception among customers and prospective customers regarding: (a) the source of Defendants' services; (b) whether Cube$^2$ is affiliated with UNITS; (c) whether Cube$^2$ remains an authorized UNITS franchise; and (d) whether UNITS endorses, sponsors, or approves Defendants' business activities.

105. Upon information and belief, actual consumer confusion has occurred and will continue to occur unless restrained by this Court.

106. Defendants' conduct constitutes trademark infringement in violation of 15 U.S.C. § 1114.

107. Defendants' infringement is knowing, deliberate, intentional, and willful.

108. As a direct and proximate result of Defendants' actions, UNITS has suffered and continues to suffer irreparable harm.

109. Pursuant to 15 U.S.C. §§ 1116 and 1117, UNITS is entitled to injunctive relief and all other remedies available under the Lanham Act.

## COUNT IV
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION

110. UNITS incorporates by reference the preceding paragraphs as though fully set forth herein.

111. Defendants have used the UNITS name, goodwill, commercial identity, and reputation in connection with the advertising and promotion of Cube$^2$ Portable Storage.

112. Defendants' advertising expressly communicates to consumers that Cube$^2$ is a continuation of the former UNITS franchise.

113. Defendants' statements that "UNITS of Huntsville is now Cube$^2$ Portable Storage" and that Cube$^2$ is operated by the same owners, employees, and equipment are intended to transfer

the goodwill associated with the former UNITS franchise directly to Defendants' competing business.

114. Defendants have used the UNITS Marks, commercial identity, and reputation in commerce in a manner likely to create confusion or mistake as to affiliation, association, sponsorship, approval, or endorsement.

115. Defendants' website statement that Cube² is "Formerly known as Units of Huntsville" further creates the false impression that Cube² is affiliated with, sponsored by, approved by, or otherwise connected to UNITS.

116. Upon information and belief, Defendants have intentionally cultivated and encouraged this confusion in order to retain customers, goodwill, online reviews, referrals, and business opportunities developed while operating as a UNITS franchisee.

117. Defendants' actions constitute false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

118. Defendants' misconduct is deliberate, intentional, and undertaken with knowledge of UNITS' rights.

119. UNITS has suffered and continues to suffer irreparable injury as a direct and proximate result of Defendants' conduct.

120. UNITS is entitled to injunctive relief and all remedies available under the Lanham Act.

## COUNT V
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §§ 2201 AND 2202

121. UNITS incorporates by reference the preceding paragraphs as though fully set forth herein.

122. Defendants are violating the Franchise Agreement, the Personal Guaranty, and federal trademark law.

123. An actual, substantial, and justiciable controversy exists between UNITS and Defendants concerning their respective rights and obligations under the Franchise Agreement, the Personal Guaranty, and the NDA, including whether the Franchise Agreement was validly terminated, whether the post-termination restrictive covenants are enforceable against Defendants, whether the Cool Cube Concept is owned by, or subject to assignment to, UNITS pursuant to Section 6.2 of the Franchise Agreement, and the scope and enforceability of UNITS' contractual rights under Section 16.4 to purchase assets of the Franchised Business following termination.

124. Defendants continue to operate a Competitive Business within the restricted territory in violation of their post-termination obligations.

125. Defendants continue to utilize and exploit goodwill associated with the UNITS Marks.

126. Defendants continue to advertise and promote Cube$^2$ as the successor to the former UNITS franchise.

127. Defendants continue to exploit proprietary concepts, developments, and improvements developed during the franchise relationship, including the Cool Cube Concept.

128. Defendants continue to possess, utilize, modify, and control containers, equipment, supplies, and other assets that were used in connection with the former Franchised Business and that are subject to UNITS' contractual purchase rights.

129. Defendants' conduct has caused and continues to cause irreparable harm, including: (a) loss of goodwill; (b) loss of control over UNITS' trademarks; (c) consumer confusion; (d) damage to the integrity of the UNITS franchise system; (e) misuse of confidential and proprietary information; and (f) unfair competition against UNITS and its franchisees.

130. Monetary damages alone cannot adequately compensate UNITS for these injuries.

131. Absent immediate injunctive relief, Defendants will continue violating UNITS' contractual and statutory rights.

132. UNITS is therefore entitled to a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that: (a) the Franchise Agreement was validly terminated effective August 7, 2026; (b) the post-termination restrictive covenants and other post-termination obligations of the Franchise Agreement, the Personal Guaranty, and the NDA are valid and enforceable against Defendants; (c) the Cool Cube Concept, together with all related developments, improvements, and intellectual property rights, is the sole and exclusive property of UNITS or subject to assignment to UNITS pursuant to Section 6.2 of the Franchise Agreement; and (d) Defendants' post-termination use of the UNITS Marks and successor messaging is unauthorized. UNITS is also entitled to preliminary and permanent injunctive relief and to all further necessary or proper relief pursuant to 28 U.S.C. § 2202.

## **PRAYER FOR RELIEF**

WHEREFORE, UNITS respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

A. Enter a preliminary injunction and, thereafter, a permanent injunction prohibiting McArdle, and all persons bound by Federal Rule of Civil Procedure 65(d)(2), including RCPM, from owning, operating, controlling, managing, participating in, assisting, or otherwise engaging in any Competitive Business, including Cube², within the Protected Territory identified in Exhibit C to the Franchise Agreement or within fifty (50) miles of the location of the former Franchised Business, through August 7, 2028;

B. Enter a preliminary injunction and permanent injunction prohibiting Defendants, and all persons bound by Federal Rule of Civil Procedure 65(d)(2), from using the UNITS Marks

or any reproduction, counterfeit, copy, colorable imitation, or confusingly similar designation, and from representing that Cube² is affiliated with, sponsored by, approved by, or the successor to UNITS or the former UNITS franchise;

C. Require Defendants to comply with all post-termination obligations contained in the Franchise Agreement and Personal Guaranty;

D. Require Defendants to return or, at UNITS' direction, permanently delete all confidential information, proprietary information, trade secrets, manuals, customer information, and other materials belonging to UNITS, and to certify compliance under oath;

E. Require Defendants to transfer, assign, surrender, or otherwise relinquish any rights in proprietary developments, inventions, improvements, modifications, or derivative works that belong to UNITS under the Franchise Agreement, including the Cool Cube Concept, to the extent authorized by the Bankruptcy Court's August 6, 2026 Order;

F. Require Defendants to account for, identify, and, as required by Sections 16.1.4 and 16.1.8 of the Franchise Agreement, assign and transfer to UNITS all websites, domains, social-media accounts, telephone numbers, listings, and business profiles subject to post-termination obligations, including the Google Business profile formerly associated with the UNITS franchise, and account for all advertising, revenues, and profits associated with Defendants' unauthorized use of the UNITS Marks;

G. Requiring Defendants to preserve all containers, equipment, supplies, leasehold improvements, and other assets of the former Franchised Business pending further order of the Court and prohibiting any sale, transfer, destruction, modification, or material alteration of such assets;

H. Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that the Franchise Agreement was validly terminated effective August 7, 2026, that the post-termination

restrictive covenants and obligations of the Franchise Agreement, the Personal Guaranty, and the NDA are valid and enforceable against Defendants, and that the Cool Cube Concept is owned by, or subject to assignment to, UNITS, together with all further necessary or proper relief pursuant to 28 U.S.C. § 2202;

I. Award UNITS its reasonable attorneys' fees, court costs, and litigation expenses pursuant to 15 U.S.C. § 1117, to the extent consistent with the Bankruptcy Court's August 6, 2026 Order and 11 U.S.C. § 362;

J. Award UNITS Defendants' profits, UNITS' damages, and the costs of this action pursuant to 15 U.S.C. § 1117 for Defendants' post-termination violations of the Lanham Act, to the extent consistent with the Bankruptcy Court's August 6, 2026 Order and 11 U.S.C. § 362;

K. Order the delivery up and destruction of all infringing materials pursuant to 15 U.S.C. § 1118, and require Defendants to file with the Court and serve on UNITS a written report under oath setting forth the manner and form of their compliance with any injunction, pursuant to 15 U.S.C. § 1116(a);

L. Order that any preliminary injunctive relief issue without bond, or upon a nominal bond, in light of Section 22.4 of the Franchise Agreement, in which Franchisee agreed that UNITS may seek injunctive relief "without posting a bond";

M. Award prejudgment and postjudgment interest as permitted by law; and

N. Award such additional relief as the Court deems just and proper.

[signature block on following page]

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: *s/ G. Mark Phillips*
G. Mark Phillips
Federal Bar No. 03051
E-Mail: mark.phillips@nelsonmullins.com
S. Quinn Mann
Federal Bar No. 14540
E-Mail: quinn.mann@nelsonmullins.com
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC 29401-2239
(843) 853-5200

LATHROP GPM LLP

Frank J. Sciremammano
(*pro hac vice application forthcoming*)
1015 15th Street, Suite 1050
Washington, D.C. 20005
Telephone: (202) 295-2232
Facsimile: (202) 295-2250
frank.sciremammano@lathropgpm.com

*Counsel for Plaintiff UNITS Franchising Group, Inc.*

Charleston, South Carolina
September 9, 2026